UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TANIA GROVE,

    Plaintiff,

v.

KENT WALLACE, KINROSS
CHARTER TOWNSHIP and
KIM HOLLAND,

    Defendants.
                                    /

Case No. 2:15-CV-166

HON. GORDON J. QUIST

## **OPINION**

    Plaintiff, Tania Grove, has sued Defendants Kent Wallace, Kinross Charter Township, and Kim Holland regarding an incident that occurred on September 2, 2013, in which Wallace forcefully entered Grove's residence during a "civil standby." In her first amended complaint, Plaintiff alleges that (1) Wallace violated her Fourth Amendment rights (Count I); (2) the Township is liable for Wallace's violation (Count II); (3) Holland committed assault and battery (Count III); and (4) Wallace and Holland both committed the tort of invasion of privacy—unlawful intrusion on seclusion (Count IV).

    Wallace and the Township move for summary judgment/dismissal on Counts I, II, and IV, and Plaintiff moves for summary judgment on Count I against Wallace. The Court heard oral argument on the motions on December 7, 2016.

    For the reasons set forth below, the Court will grant Plaintiff summary judgment and deny Wallace summary judgment on Count I, grant the Township summary judgment on Count II, and grant Wallace summary judgment on Count IV.

I.  FACTS

The facts material to the instant motions are largely undisputed.

On the morning of September 2, 2013, Defendant Wallace, a police officer with the Kinross Township Police Department, was dispatched to 81 Evergreen Drive, Kincheloe, Michigan, for a so-called "civil standby" requested by Defendant Kim Holland.  Plaintiff owned the residence, and Jason Grove, Holland's ex-husband, who was Plaintiff's then-fiancé, stayed there occasionally.  Grove's and Holland's three children, for whom they shared joint custody, were staying with Plaintiff and Grove that week so that the children could participate in 4-H competitions at the Chippewa County Fair.  Holland requested police presence while she picked up the children from Grove.

That morning, Plaintiff, Grove and the children had gone to the fair grounds to take care of the children's animals.  After they returned home, around 9:00 a.m., they went to the family room in the basement to watch movies.  Later that morning, before noon, Plaintiff left the residence to get some exercise and locked the front door.

Holland called the police around 11:00 a.m.  When Wallace and Reserve Officer Gary Grabendike arrived at the Evergreen address, Holland told them that she was there to pick up her children and no one was answering the knocks on the door even though both vehicles (Plaintiff's and Grove's) were in the driveway.  Wallace knocked on the front door several times without a response.  Holland told Wallace that she was supposed to pick up the children between 11:00 a.m. and noon; Wallace suggested that they come back around noon and try again.  Wallace and Officer Grabendike returned to their office, and Holland went to the fair grounds to search for Grove and the children.

Wallace and Officer Grabendike returned to the residence around noon, where they met Holland and her husband.  Wallace, Officer Grabendikek and the Hollands went to the front door,

2

and Wallace knocked several times. Receiving no answer, Wallace told Holland and that there was nothing else he could do and suggested that she file a complaint with the friend of the court. As Wallace turned to walk away, he heard a baby or a child crying.[1] Wallace told Officer Grabendike that he was going into the residence. Wallace then knocked on the front door, announced himself, and yelled that he was going to come in if the occupants did not answer. Receiving no response, Wallace kicked the door several times with his foot and forced it open. Wallace entered and yelled "police department," at which point Grove came up the stairs. Wallace demanded that Grove produce identification, and Grove complied. Wallace left the residence after about ten minutes.

## II. DISCUSSION[2]

**A.  Fourth Amendment Claim Against Wallace**

In Count I, Plaintiff alleges that Wallace violated her Fourth Amendment rights by entering her house without a warrant. Wallace concedes that he lacked a warrant, but argues that there were exigent circumstances and that, therefore, he is entitled to qualified immunity. Plaintiff argues that she is entitled to summary judgment because there were no exigent circumstances and Wallace is not entitled to qualified immunity.

"Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant official violated a right

---

[1] Officer Grabendike testified that he could not hear the crying because he was not wearing his hearing aids. (ECF No. 20-7 at PageID.237–38.)

[2] The Court finds it unnecessary to recite the well-known summary judgment standard.

3

so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 3039 (1987)). An officer is entitled to qualified immunity either if he did not violate the plaintiff's constitutional rights or the right "was not 'clearly established' at the time of the alleged misconduct." *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 815–16 (2009)).

### 1. Constitutional Violation

Plaintiff alleges that Wallace violated her rights under the Fourth Amendment by entering her house without a warrant. It is clearly established that, unless one of the limited exceptions to the warrant requirement applies, police officers may not enter an individual's home without a warrant supported by probable cause. *Kirk v. Louisiana*, 536 U.S. 635, 638, 122 S. Ct. 2458, 2459 (2002) (per curiam). Wallace concedes that he lacked a warrant but argues that the exigent circumstances exception applies in this case. "Exigent circumstances are situations where real[,] immediate and serious consequences will certainly occur if the police officer postpones action to obtain a warrant." *Thacker v. City of Columbus*, 328 F.3d 244, 253 (6th Cir. 2003) (internal quotation marks omitted). The Sixth Circuit has recognized that a risk of danger to the police or others may present exigent circumstances. *See United States v. Williams*, 354 F.3d 497, 503 (6th Cir. 2003). Similarly, the Supreme Court has recognized that "the need to assist persons who are seriously injured or threatened with such injury" constitutes an exigency excusing a warrant. *Brigham City v. Stuart*, 547 U.S. 398, 403, 126 S. Ct. 1943, 1947 (2006). In *Brigham City*, police officers responded to a call in the early morning regarding a loud party at a residence. Upon arrival, the police officers observed through windows and a screen door an altercation in which a juvenile struck an adult in the face, causing the adult to bleed from the mouth. An officer entered the

residence and announced his presence. *Id.* at 400, 126 S. Ct. at 1946. The Court held that the entry was reasonable under the circumstances because the officers could have reasonably believed that the injured adult might need help and that the violence was just beginning. *Id.* at 406–07, 126 S. Ct. at 1949. Thus, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Id.* at 403, 126 S. Ct. at 1947. "Officers do not need ironclad proof of 'likely serious, life-threatening' injury to invoke the emergency aid exception." *Michigan v. Fisher*, 558 U.S. 45, 49, 130 S. Ct. 546, 549 (2009). However, they must have "'an objectively reasonable basis for believing[]' that 'a person within [the house] is in need of immediate aid[.]'" *Id.* at 47, 130 S. Ct. at 548 (quoting *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 2413 (1978)). In other words, there must be a "true immediacy . . . [and] real danger that serious consequences would certainly occur" to support the exception. *Williams*, 354 F.3d at 504. A hunch or mere possibility that an occupant needs immediate aid cannot justify a warrantless entry. *Gradisher v. City of Akron*, 794 F.3d 574, 584 (6th Cir. 2015) (quoting *Nelms v. Wellington Way Apartments, LLC*, 513 F. App'x 541, 545 (6th Cir. 2013)).

Wallace argues that exigent circumstances existed because (1) Holland and Grove were to exchange the children between 11:00 a.m. and noon; (2) no one answered the door at 11 a.m.; (3) Holland could not find Grove and the children at the fairgrounds; (4) no one answered the door at 12 p.m.; (5) Wallace heard dogs and movement inside the house[3]; and (6) Wallace heard a baby or child crying. (ECF No. 20 at PageID.129.) None of the these circumstances, either alone or in combination, provide "an objectively reasonable basis for believing[] that a person within [the house] is in need of immediate aid[.]" *Fisher*, 558 U.S. at 47, 130 S. Ct. at 548 (internal quotation

---

[3]Wallace cites no record evidence to establish that he heard dogs and movement inside the house.

marks omitted). The facts boil down to this: someone was home but not answering the door and a baby was crying. A conclusion that exigent circumstances existed on these facts requires a fair degree of speculation, which, as mentioned above, cannot support exigent circumstances. An occupant may not answer the door for a number of reasons: she does not hear knocking or the doorbell ringing; she is busy with something more pressing, such as a hungry, tired, or belligerent child; or perhaps she simply does not want to answer the door. A crying baby or child, on these facts, adds nothing to the exigent circumstances calculus. Moreover, the cases Wallace cites, *Schreiber v. Moe*, 596 F.3d 323 (6th Cir. 2010), and *Hameed v. City of Dearborn*, 2012 WL 3758083 (E.D. Mich. Oct. 29, 2013), are distinguishable because, in both cases, the police received 911 calls reporting possible domestic violence. In *Schreiber*, the circumstances the officer observed when he arrived at the residence tended to confirm the caller's report that the plaintiff was beating his daughter. *Schreiber*, 596 F.3d at 330–31. Similarly, in *Hameed*, the crying baby confirmed the caller's report of domestic abuse. *Hameed*, 2012 WL 3758083, at *3. In the instant case, there was no similar circumstance linking the crying baby to imminent injury or the need for immediate police assistance. While "ironclad proof" is not required to support the need for immediate assistance or aid, *Fisher*, 558 U.S. at 49, 130 S. Ct. at 549, there must be more than a thin reed of speculation. *Gradisher*, 794 F.3d at 584. Because there is no genuine issue of material fact, Plaintiff has established a constitutional violation as a matter of law.

    **2.**    **Clearly Established**

Citing *Mullenix v. Luna*, __ U.S. __, 136 S. Ct. 305 (2015), and *Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct. 596 (2004), Wallace argues he is entitled to qualified immunity because the law was not clearly established that his conduct violated the Fourth Amendment in this particular context. In *Mullenix* and *Brosseau*—both of which were excessive force cases—the Supreme Court emphasized that courts should not conduct the clearly established inquiry "'at a high level of

generality.'" *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742, 131 S. Ct. at 2084). However, the Court also reaffirmed that a case directly on point is not necessary, so long as the official has notice that his conduct violates the right at issue. *Id.* In this regard, there are

> two paths for showing that officers were on notice that they were violating a "clearly established" constitutional right—where the violation was sufficiently "obvious" under the general standards of constitutional care that the plaintiff need not show "a body" of "materially similar" case law, and where the violation is shown by the failure to adhere to a "particularized" body of precedent that "squarely govern[s] the case here[.]"

*Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199–201, 125 S. Ct. at 599–600) (internal citations omitted).

In this Court's judgment, in the instant case, the law was clearly established under the first path—the constitutional violation arising from a police officer's entry into a residence without a warrant on the grounds of exigency, where the only justification is that the occupant does not answer the door and a crying baby or child can be heard inside, is obvious in light of "general standards of constitutional care." *Id.*; *cf. Keeton v. Metro. Gov't of Nashville & Davidson Cnty.*, 228 F. App'x 522, 525 (6th Cir. 2007) ("Where the police enter a home without a warrant and with no justification beyond an unverified, unreliable report that the occupant of the home is 'depressed,' the constitutional violation is obvious in light of the general constitutional rule."). Accordingly, Wallace is not entitled to qualified immunity.

**B.    Municipal Liability Claim**

In Count II, Plaintiff alleges a claim for municipal liability against the Township based on theories of failure to train, failure to investigate, ratification, and the existence of a Township policy giving police officers discretion to enter homes in the manner Wallace entered Plaintiff's home. The Township is entitled to summary judgment because Plaintiff fails to present sufficient evidence to support these theories.

To establish municipal liability, a plaintiff must "(1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191, 195 (6th Cir. 2010) (internal quotation marks omitted). Plaintiff fails to present any evidence that establishes a policy. In fact, Chief Micolo states, "We don't have a policy and practice that fits this situation."[4] (ECF No. 26 at PageID.414.) Plaintiff cites no other evidence to support the existence of a policy. In addition, Plaintiff fails to show that the Township acted with deliberate indifference—a necessary element for both failure to train and failure to investigate theories of municipal liability. *See Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Hill v. McIntyre*, 884 F.2d 271, 275 (6th Cir. 1989)); *Baker v. Union Twp.*, No. 1:12-CV-112, 2013 WL 4502736, at *23 (S.D. Ohio Aug. 22, 2013).

**C.    Intrusion on Seclusion Claim**

Finally, Wallace is entitled to governmental immunity on Plaintiff's state-law intrusion on seclusion claim alleged in Count IV. A governmental employee may establish a right to immunity on an intentional tort by showing: (1) that his acts were undertaken during the course of employment and he was acting, or reasonably believed he was acting, within the scope of his employment; (2) he performed the challenged acts in good faith or without malice; and (3) the acts were discretionary, as opposed to ministerial. *Odom v. Wayne Cnty.*, 482 Mich. 459, 480, 760 N.W.2d 217, 228 (2008). Only the second element is at issue. "Good faith" is a subjective test, under which a defendant is subject to liability only if he acted with "malicious intent." *Id.* at 482, 760 N.W.2d at 229; *see also Brown v. Lewis*, 779 F.3d 401, 420 (6th Cir. 2015) (noting that *Odom* overruled

---

[4]In her response brief, Plaintiff states that Chief Micolo's deposition testimony is in the record, but having reviewed the docket report in this case, the Court determines that Plaintiff is mistaken about the deposition transcript having been filed.

prior case law that held that an objective test applied to intentional tort claims, such as assault and battery, for purposes of governmental immunity).

Plaintiff fails to allege any facts or make any argument to show that Wallace acted with malicious intent. The undisputed evidence is that Wallace was walking away when he heard a child cry. Although Wallace mistakenly concluded that the circumstances allowed him to enter Plaintiff's residence, there is no indication that Wallace acted in bad faith or with malice.

### III. CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff summary judgment on Count I. The Court will deny Defendant Wallace summary judgment on Count I, grant the Township summary judgment on Count II, and grant Wallace summary judgment on Count IV.

A separate order will enter.

Dated: December 19, 2016                             /s/ Gordon J. Quist
                                                   GORDON J. QUIST
                                           UNITED STATES DISTRICT JUDGE